COREY BROWN (IN PRO PER)
COREYB8111@YAHOO.COM
1526 South Hope Street Apt #29
Los Angeles, CA 90015
TELEPHONE: (213) 804-5630
IN PRO PER



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

COREY BROWN individually,

      Plaintiff,

   vs.

CITY OF LOS ANGELES; OFFICER
BLANCO; OFFICER GARCIA;
TOMASINO HERNANDEZ;
BERENICE OSEGUERA; GEORGE
RAMIREZ DOES 1-10 inclusive,

      Defendants.

Case No.: CV22- 7130-SPG(MAA)

**PLAINTIFF'S COMPLAINT
FOR DAMAGES**

REQUEST FOR JURY TRIAL

## INTRODUCTION

1.     This case challenges the abuse of discretion, racial profiling, unlawful detention, false arrest and excessive force that deprived Plaintiff Corey Brown of his federal rights. Los Angeles Police Department Officers Blanco and Garcia abused their powers when they responded to Mr. Brown's 911 call for help by arriving at the scene and immediately pointing their guns at him, falsely accusing him of being under the influence of drugs and alcohol and throwing him in jail

for twelve hours.  The officers handcuffed, arrested, and detained Mr. Brown without probable cause or reasonable suspicion that he had committed any crime. This case also challenges the hate crimes, assault, battery and intentional infliction of emotional distress committed by Tomasino Hernandez, Berenice Oseguera, George Ramirez and other unknown defendants, which led Mr. Brown to call the police for help.

2.     Plaintiff Brown complains of Defendants City of Los Angeles, Officer Blanco, Officer Garcia, Tomasino Hernandez, Berenice Oseguera, George Ramirez and DOES 1 through 10, inclusive, as follows:

## VENUE AND JURISDICTION

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and arises under 42 U.S.C. §§1983 and 1988.  State law State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Los Angeles, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

4.     At all relevant times herein, PLAINTIFF Corey Brown (hereinafter "Mr. Brown" or "Plaintiff") was and is a resident of the State of California in the County of Los Angeles.

5.     Defendant CITY OF LOS ANGELES (hereinafter referred to as "CITY") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LOS ANGELES POLICE DEPARTMENT (hereinafter referred to as "LAPD") and its tactics, methods, practices, customs and usages.

6.    Defendant LAPD OFFICER BLANCO (Serial No. 42648) (hereinafter "BLANCO") is, and at all times in this complaint was, an individual employed by CITY and/or its subsidiaries as a police officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, CITY.

7.    Defendant LAPD OFFICER GARCIA (Serial No. 42500) (hereinafter "GARCIA") is, and at all times in this complaint was, an individual employed by CITY and/or its subsidiaries as a police officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, CITY.

8.    At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant CITY, duly employed as police officers by the LAPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

9.    Defendant BERENICE OSEGUERA (hereinafter "OSEGUERA") was and is a resident of the State of California in the County of Los Angeles.

10.    Defendant GEORGE RAMIREZ (hereinafter "RAMIREZ") was and is a resident of the State of California in the County of Los Angeles.

11.    Defendant TOMASINO HERNANDEZ (hereinafter "HERNANDEZ") was and is a resident of the State of California in the County of Los Angeles.

12.    PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious

names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

13.  Defendant CITY and Officers Blanco and Garcia acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

14.  Defendants Hernandez, Ramirez, Oseguera and DOES 1-10 inclusive also did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

15.  Mr. Brown is a 50-year-old African American man.

16.  On August 20th, 2020, at 10:30pm, as Mr. Brown was taking the trash out, he was suddenly brutalized in a racial hate crime by at least at least ten people of Latino descent.

17.  Mr. Brown's attackers, Defendants HERNANDEZ, RAMIREZ, OSEGUERA and DOES 1-10 inclusive attacked Mr. Brown by repeatedly striking Mr. Brown with a metal pole and broom, punching and kicking him in the face.

18.  As Defendants HERNANDEZ, RAMIREZ, OSEGUERA and DOES 1-10 inclusive attacked Mr. Brown, they also called him "nigger," "faggot," "mayate (Spanish for 'nigger')," told him "we don't want you here," and "don't you know where you are?" brandished a gun, took his keys and threw them over the fence of his apartment to California Dignity Hospital, which was located behind his apartment.

19.  Mr. Brown ran away from Defendants HERNANDEZ, RAMIREZ, OSEGUERA and DOES 1-10 inclusive, made it to his apartment manager's office and asked the manager to call the police.

20.   While Mr. Brown was in the apartment lobby, dazed and confused, he stepped out and saw his attackers, Defendants HERNANDEZ, RAMIREZ, and DOES 1-10 inclusive again.  Again, he ran away, but they caught up to Mr. Brown and surrounded him. They overwhelmed Mr. Brown, beating him unconscious and pushing him down the stairs. He eventually made it to the nearby California Dignity Hospital parking lot on foot.

21.   In the California Dignity Hospital parking lot, Los Angeles Police Department Officers Blanco (Serial No. 42648) and Garcia (Serial No. 42500) suddenly approached Mr. Brown with guns drawn, told him not to talk and handcuffed him. When the officers allowed Mr. Brown to speak, he told them that he was a victim of a racial hate crime who had called the officers for help. Mr. Brown directed the officers to look at cameras at his apartment complex to prove what happened to him.

22.   However, the officers did not believe him.  Officers Blanco and Garcia said something to the effect of, "We can smell you from here, the alcohol and weed. You must have done something to deserve this."

23.   Mr. Brown does not drink or smoke, and he denied drinking or smoking to the officers.

24.   Despite Mr. Brown telling Officers Blanco and Garcia that he needed medical attention because he was just brutalized in a hate crime, the officers never took him inside the hospital at any point.

25.   Instead of ensuring that Mr. Brown would receive medical attention, Officers Blanco and Garcia simply told him that an investigator would arrive at some point, retrieve the video footage of the event and talk to his apartment manager.  The officers then asked Mr. Brown what he wanted, and he said that he wanted the attackers arrested.

26.   Mr. Brown had been handcuffed for over an hour.  After being detained outside for over an hour, the officers put him into the back seat of a police car.

27.     The police found his keys and glasses in the hospital parking lot, which corroborated his story about being assaulted in a hate crime and having his keys taken and thrown. However, the officers still repeatedly blamed him for the assault, saying that he was "too old for this."

28.     Instead of escorting Mr. Brown inside the hospital, officers drove Mr. Brown away from the hospital and took him to jail. They processed him in jail and refused to let him go to the restroom.

29.     Although a paramedic came to the jail to see Mr. Brown, the paramedic only checked Mr. Brown's vitals and blood pressure.  The paramedic did not examine any of Mr. Brown's injuries, which included five damaged vertebrae in the spine, broken teeth, a black eye, injured eye socket, swelling in his head, missing hair, a busted mouth, swollen lip, and a swollen and scratched right shoulder, all of which, he suffered while being beaten unconscious during the hate crime. These injuries were apparent and visible to the Officers Garcia and Blanco.

30.     Officers reviewed the apartment manager's video footage depicting Mr. Brown being assaulted, however, LAPD did not investigate the hate crime.

31.     LAPD released Mr. Brown at noon on August 21, 2020, at least 12 hours after he was taken into custody.  Despite reviewing the video footage proving that Mr. Brown was the victim of a brutal assault and battery, Defendant Officers charged Mr. Brown with battery.  However, the District Attorney declined to bring charges.

///
///
///
///
///
///
///

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS – UNREASONABLE SEIZURE
## 42 U.S.C. § 1983
## (AGAINST OFFICER BLANCO, OFFICER GARCIA, DOES 1 through 10, inclusive)

32.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

33.   This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

34.   As a result of the above-described intentional acts and omissions of the Defendant Officers, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

     a.   LAPD Officers Blanco and Garcia immediately pulled up to Mr. Brown, pointed their guns at him, after he had already been beaten unconscious in a racial hate crime and called them for help.  The officers had no reasonable suspicion to believe that Mr. Brown was armed or dangerous;

     b.   LAPD Officers Blanco and Garcia handcuffed Mr. Brown without reasonable suspicion that Mr. Brown had violated any laws or committed any other unlawful activity;

     c.   LAPD Officers Blanco and Garcia kept Mr. Brown handcuffed for over an hour before forcing him into a police patrol car without a warrant, reasonable suspicion or probable cause to believe that Mr. Brown had committed or was going to commit any crime;

d.    LAPD Officers Blanco and Garcia arrested Mr. Brown for battery without a warrant, reasonable suspicion or probable cause to believe that he had committed or was going to commit a crime.

35.    The conduct of the Defendants amounted to excessive force, unlawful detention, and false arrest in violation of the Fourth Amendment.

36.    LAPD Officers Blanco and Garcia arrested Mr. Brown without a warrant, probable cause, or reasonable suspicion that he committed a crime.

37.    As a result of Defendant Officer's conduct, Plaintiff sustained and incurred damages for physical injuries, emotional injuries, mental pain and anguish, humiliation, embarrassment, harm to his reputation in the community and loss of liberty.

38.    The conduct of LAPD Officers Blanco and Garcia was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

39.    As a result of the conduct of LAPD Officers Blanco and Garcia, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

40.    Accordingly, LAPD Officers Blanco and Garcia are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

///

///

///

///

///

///

## SECOND CAUSE OF ACTION
## EQUAL PROTECTION VIOLATION
## 42 U.S.C. § 1983
## (AGAINST OFFICER BLANCO, OFFICER GARCIA, DOES 1 through 10, inclusive)

41.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

42.     LAPD Officers Blanco and Garcia, as agents of the LAPD, an institution with a documented history, pattern, and practice of harassing non-white citizens, and engaging in unlawful uses of force and arrest, have demonstrated a propensity for animus against African- American citizens.

43.     LAPD Officers Blanco and Garcia invidiously discriminated against Plaintiff by:

  a. Depriving Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures by collectively participating in the wrongful search, detention, and arrest or failing to intervene in these constitutional violations as recited above because he is African-American;

  b. Depriving Plaintiff of his right to be free from unreasonable searches and seizures by collectively using unreasonable force in violation of the Fourth Amendment and Fourteenth Amendments as recited above because he is African- American; and

  c. Depriving Plaintiff of his right to be free from racial animus during police contact by mocking Plaintiff as described in this complaint.

44.     LAPD Officers Blanco and Garcia did not treat other similarly situated persons in Mr. Brown's community similarly and their sole basis for their discriminatory conduct was based on racial affiliation.

45.     By virtue of the foregoing, Defendants deprived Plaintiff of (a) equal protection of the law and (b) equal protection and immunities under the law, and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiff equal protection of the law and deprivation of liberty and property without due process of the law.

46.     As a direct proximate result of the foregoing, Plaintiff has been injured as set forth above.

47.     Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**

**MUNICPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE**

**42 U.S.C. § 1983**

**(Against Defendant CITY)**

48.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

49.     Defendant CITY, is and at all times herein mentioned, has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LAPD and its tactics, methods practices, customs and usages.

50.     At all times herein mentioned, Defendants and each of them, were employees acting under the CITY and LAPD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein

mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, discriminatory practices, and numerous other serious abuses of their powers as peace deputies during their employment by the CITY.

51.    The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant CITY and LAPD include, but are not limited to:

a.    Defendants CITY and LAPD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful uses of force, dishonesty and improper tactics, and corruption by LAPD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests;

b.    Defendant CITY and LAPD refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

c.    Defendant CITY and LAPD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by CITY and LAPD employees;

d.    Defendant CITY and LAPD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other CITY and LAPD employees;

e.    Defendant CITY and LAPD covered up acts of misconduct and abuse by CITY and LAPD employees and sanctioned a code of silence by and among LAPD Officers;

f.    Defendant CITY and LAPD failed to adequately supervise the actions of employees under its control;

g.    Defendant CITY and LAPD failed to adequately train, supervise its officers and employees in contacting civilians and making stops and arrests based only on reasonable suspicion and probable cause, instead, among other things, allowing officers to profile individuals in a racially discriminatory fashion.

h.    Defendant CITY and LAPD failed to adequately train, supervise, and control LAPD officers in uses of force, including pointing firearms at individuals not reasonably suspected to be armed and dangerous;

i.    Defendant CITY and LAPD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

j.    Defendant CITY and LAPD tacitly condones and encourages use of excessive force on citizens;

k.    Defendant CITY and LAPD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by May 30, 2019, and thereafter, represented the unconstitutional policies, practices and customs of the CITY and LAPD.

l.    Defendant CITY and LAPD's arrest, detention and unlawful use of force of Plaintiff is a part of practice and pattern of the CITY's unlawful mistreatment and criminalization of African-Americans.

52.    Defendant Officers were aware of the CITY's aforementioned unconstitutional policies, practices and customs detailed in Paragraph 49, and were aware that the CITY would protect them by covering up or condoning their misconduct.  This allowed Defendant Officers to engage in the misconduct alleged in this Complaint.

53.    The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendants CITY and LAPD:

     a.     According to media reports, Los Angeles Police Department has a history of failing to identify hate crimes.[1]

     b.     Law enforcement in Los Angeles has a history of failing to take the amount of training hours required by the California Commission on Peace Officer Standards and Training.[2]

     c.     LAPD Officers have a history of prolonged detentions, failing to properly investigate the validity of wrongful incarcerations even after sufficient notice.[3]

54.    On information and belief, Defendant LAPD Officers Blanco and Garcia did not attend training programs related to anti-discrimination prior to the incident with Plaintiff.

55.    On information and belief, Defendant LAPD Officers Blanco and Garcia did not attend training programs related to use of force prior to the incident with Plaintiff as required by the California Commission on Peace Officer Standards and Training.

56.    On information and belief, Defendant LAPD Officers Blanco and Garcia did not attend training programs related to investigation of hate crimes and lawful search and seizure prior to the incident with Plaintiff as required by the California Commission on Peace Officer Standards and Training.

57.    Defendant CITY was aware that its officers have not completed required training courses delineated by the California Commission on Peace Officer Standards and Training. Defendant Officer Blanco and Defendant Officer Garcia's failure to attend these trainings prevented them from understanding new

---

[1] Hate Crimes: California Law Enforcement Agencies Audited (September 2018), https://www.svvoice.com/hate-crimes-california-law-enforcement-agencies-audited/
[2] Many LA County Sheriff's Deputies Didn't Take Training Courses (March 2022) https://goodwordnews.com/many-la-county-sheriffs-deputies-didnt-take-training-courses/
[3] Martinez v. City of Los Angeles, 141 F.3d 1373, 1381 (9th Cir. 1998).

case law that identifies proper responses designed to prevent the misconduct Plaintiff complains of in this complaint.

58.     Prior to the incident, CITY knew prior to the incident, its training program was insufficient to prevent the type of conduct experience by Plaintiff but did nothing to prevent the conduct.

59.     The Chief of Police of Los Angeles is the final decision maker to determine if employee's actions were within policy and procedure and will determine whether any additional actions, investigations or reviews are appropriate.

60.     Plaintiff has submitted a complaint against the Defendant LAPD Officers Blanco and Garcia complaining of Defendants' conduct.

61.     On information and belief, the Chief of Police reviewed the conduct described in the Complaint and either initiated a review of the conduct of Defendant Officers or declined the review of the conduct.

62.     The aforesaid policies, customs, practices and usages described in this Complaint were the moving force that caused Plaintiff to be subjected to unconstitutional policing by Defendant Officers on August 20, 2020.

63.     By reason of the aforesaid policies, customs, practices and usages, Plaintiff's Fourth and Fourteenth Amendments to the United States Constitution were violated.

64.     Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**

**ASSAULT AND BATTERY**

**(Against TOMASINO HERNANDEZ, BERENICE OSEGUERA, GEORGE RAMIREZ and DOES 1 through 10, inclusive)**

65.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

66.     On August 20, 2020 Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive assaulted and battered Plaintiff by acts which included, but were not limited to: repeatedly punching Plaintiff in the face and body, beating him unconscious, striking him with a metal pole and brandishing a gun at him.

67.     In assaulting and battering Plaintiff as described herein, Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive proximately caused severe and potentially permanent injuries to Mr. Brown.

68.     Both prior to and during the time in which he was assaulted and battered, Mr. Brown did not commit a crime, was not armed with any kind of weapon and posed no reasonable threat of violence to Defendants Hernandez, Ramirez and Oseguera, nor to any other individual. When he was attacked, as described herein, Plaintiff made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable person that he had the will or ability to inflict bodily harm against any individual.

69.     As a result of the above alleged conduct, Plaintiff suffered serious bodily harm including, but not limited to five damaged vertebrae in the spine, broken teeth, a black eye, injured eye socket, swelling in his head, missing hair, a busted mouth, swollen lip, and a swollen and scratched right shoulder.

70.     As a result of these acts, Mr. Brown was placed in great fear of his life and physical well-being. Moreover, due to the wrongful, intentional, and malicious acts of the Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive, Plaintiff has suffered and will continue to suffer extreme pain and mental anguish.

71.     As a proximate result of the aforementioned conduct of Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive, Plaintiff has been required to employ and did employ physicians to examine, treat and care for him, and incurred other incidental medical expenses in an amount according to proof at trial.

72.    The aforementioned acts and omissions alleged herein were intended by Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive to cause injury to Plaintiff, and were done with a conscious disregard for the rights and safety of Plaintiff, as the acts and omissions were willful, wanton, malicious and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE RALPH ACT
### Cal. Civil Code §§51.7

### (Against TOMASINO HERNANDEZ, BERENICE OSEGUERA, GEORGE RAMIREZ, and DOES 1-10 Inclusive)

73.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

74.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

75.    Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive threatened Mr. Brown and committed acts of violence against Mr. Brown—as described in the complaint— because of his race.

76.    As a result of their conduct, Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive are liable for Mr. Brown's injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

77.    As a direct and proximate result of the aforementioned wrongful acts of Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive, individually Mr. Brown sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment,

as well as harm to his reputation in the community.

78.     The conduct of the aforementioned Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive individually, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Brown, entitling Plaintiff to an award of exemplary and punitive damages.

79.     Plaintiff seeks statutory damages under California Civil Code Section 52(b), as well as compensatory and punitive damages according to proof.

**SIXTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(Against TOMASINO HERNANDEZ, BERENICE OSEGUERA, GEORGE RAMIREZ, and DOES 1-10 Inclusive)**

80.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

81.     Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive, caused Mr. Brown severe emotional distress on August 20, 2020 when:

    a.     Defendants Hernandez, Oseguera, Ramirez and DOES 1 through 10 inclusive, attacked Mr. Brown by repeatedly striking Mr. Brown with a metal pole and broom, punching and kicking him in the face while calling him "nigger," "faggot," "mayate," saying "we don't want you here," "don't you know where you are?" brandishing a gun, taking his keys and throwing them over the fence of his apartment to California Dignity Hospital, which was located in the back of his apartment.

    b.     These acts were done in public, for all to see, and caused Mr. Brown to have to run away and ask the apartment's manager to call the police.

c.   While Mr. Brown was in the apartment lobby, dazed and confused, he stepped out and saw his attackers, Defendants HERNANDEZ, RAMIREZ, OSEGUERA and DOES 1-10 inclusive again.  He ran away, but they caught up to Mr. Brown and surrounded him. They overwhelmed Mr. Brown, beating him unconscious and pushing him down the stairs. He eventually made it to the nearby California Dignity Hospital parking lot on foot.

82.   The acts of Defendants HERNANDEZ, RAMIREZ, OSEGUERA and DOES 1-10 inclusive caused Mr. Brown's physical injuries, which included five damaged vertebrae in the spine, broken teeth, a black eye, injured eye socket, swelling in his head, missing hair, a busted mouth, swollen lip, and a swollen and scratched right shoulder.

83.   The aforementioned Defendants' conduct was outrageous and done so to cause Mr. Brown's emotional distress or acted with reckless disregard to the probability that Mr. Brown would suffer emotional distress.

84.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

85.   As a direct and proximate cause of Defendants' actions and inactions, individually and as a peace officers, Mr. Brown suffered and continues to suffer serious physical pain and injuries for which he is entitled to recover damages. Moreover, due to the foregoing acts of each of these Defendants, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress.

86.   Defendants' conduct was a substantial factor in causing Mr. Brown's severe emotional distress.

87.   In doing the aforementioned acts, Defendants' conduct was intentional, outrageous, malicious, and done for the specific purpose of causing Plaintiffs to suffer extreme emotional and physical distress, fear, anxiety, and mental anguish,

entitling Plaintiffs to an award of exemplary and punitive damages as to the individual Defendants.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS – UNREASONABLE SEARCH 42 U.S.C. § 1983

## (Against OFFICER GARCIA, OFFICER BLANCO and DOES 1 through 10, inclusive)

88.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

89.   This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

90.   As a result of the above-described intentional acts and omissions of the Defendant Officers GARCIA, BLANCO, collectively and individually, and DOES 1 through 10, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches, as applied to state actors by the Fourteenth Amendment, was violated when:

      a.   Officers Garcia and Blanco stopped Mr. Brown at gunpoint, without reasonable suspicion that Mr. Brown violated had committed any unlawful activity;

      b.   Officers Garcia and Blanco arrested Mr. Brown, without probable cause to believe that Mr. Brown violated had committed any unlawful activity; and

      c.   Performed a search incident to the aforementioned unlawful arrest

91.   The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

92.     As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful search, or because they failed to intervene to prevent these violations.

93.     At no point did Mr. Brown pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Mr. Brown made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Mr. Brown had the will or ability to inflict substantial bodily harm against any individual.

94.     Additionally, Defendant Officers acted entirely without probable cause or reasonable suspicion that Mr. Brown had committed, was committing, or would commit any crime.

95.     Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

### PRAYER

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1. For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2. For special damages according to proof;

3. For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4. For prejudgment interest;

5. For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

/ / /

/ / /

6.  For reasonable costs of this suit incurred herein;

7.  For such other and further relief as the Court may deem just, proper and appropriate.

Dated: September 26, 2022

/s/Corey Brown
Corey Brown
In Pro Per

## **REQUEST FOR JURY TRIAL**

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: September 26, 2022

/s/Corey Brown
Corey Brown
In Pro Per